**SO ORDERED.**

**SIGNED this 3rd day of September, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

---

DESIGNATED FOR ONLINE PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In re:**<br><br>**Steven Wayne Porubsky**<br>**Shauna Christina Porubsky,**<br><br>**Debtors.** | **Case No. 25-11118**<br>**Chapter 12** |

## <u>Memorandum Opinion Overruling Chapter 12 Trustee's Objection to Confirmation</u>

This matter concerns Chapter 12 trustee oversight of the payment of attorney's fees, and specifically, whether those fees must be paid through case administration, i.e., through the Trustee's office, and subject to the Trustee's fee, or whether a debtor should be permitted to pay the fees directly to counsel as those fees are allowed by the Court. Because the Court concludes there is no Bankruptcy

Code[1] provision requiring as a matter of law that attorney fees be paid through the Chapter 12 trustee, the Court overrules the objection to confirmation filed on that basis.[2]

## I. Factual and Procedural Background

Debtors Steven and Shauna Porubsky[3] filed a Chapter 12 petition, and in the Disclosure of Compensation filed with the petition counsel disclosed that prepetition he had received $50,000 from Robert and Mary Porubsky for legal services and that no balance was due on the petition date.[4] Debtors also filed an Application to Employ Legal Counsel,[5] seeking to employ the law firm of Prelle Eron & Bailey, P.A. as counsel for their Chapter 12 case. The Application disclosed the law firm was holding retainer funds in its trust account on the petition date of $47,310.50 and was paid for fees for work up to the date of filing. The law firm also filed a motion for approval of procedures for compensation,[6] seeking approval of monthly interim compensation, with twenty percent of the fees for legal services rendered to be held in trust pending Court approval of an interim fee application. Orders were entered granting both the Application and the motion on November 12, 2025.

---

[1] All future references to “Bankruptcy Code,” “Code,” or “§,” refer to Title 11 of the United States Code.

[2] Debtors appear by David Prelle Eron of Prelle Eron & Bailey, PA. The Chapter 12 Trustee, Carl Davis, appears personally.

[3] Debtors’ case is jointly administered with the case of Porubsky Farms LLC, Case No. 25-11119-12, and a joint plan of reorganization was confirmed. The Court will refer to the debtors collectively as Debtors.

[4] Doc. 1 p. 9.

[5] Doc. 13.

[6] Doc. 15.

Debtors later filed their Chapter 12 plan.[7] In the proposed plan, Debtors state that except as otherwise set forth, "all payments to be paid during the Plan shall be paid to the Trustee" and will include both the sum for the creditor payment and the Trustee's fee as determined by 28 U.S.C. § 586(e).[8] The treatment of each individual class of creditor claims then either indicates that payments "shall be made through the Trustee during the term of the Plan, and directly by the respective Debtors afterwards, until the claims, together with interest, are paid in full"[9] or more simply that payments "shall be made through the Trustee."[10]

As to administrative claims, the plan states:

> Class 1 consists of those administrative expenses that the Court shall allow in accordance with 11 U.S.C. § 503. Debtors anticipate such claims to consist of unpaid fees to professionals and unpaid post-petition expenses in the approximate amount of $0.00. The Debtors shall directly pay Class 1 Claims as and when funds are available, but in no case more than 12 months after the Effective Date or following allowance by the Court, whichever is later.[11]

The Chapter 12 trustee Carl Davis ("Chapter 12 Trustee") objected to this language, stating debtors' attorney fees "should be paid through Trustee case administration."[12] The Trustee's position is that administrative expenses allowed under § 503 should be paid through the Trustee absent a court order and that the

---

[7] Doc. 68.

[8] *Id.* p. 3.

[9] *E.g.*, *id.* p. 12.

[10] *E.g.*, *id.* p. 17.

[11] *Id.* p. 8.

[12] Doc. 74 p. 1 ¶ 1.

plan's proposed treatment would bypass trustee oversight, risk unequal or delayed payment, and conflict with § 1226(b).

Additional objections to confirmation were filed and the Court set an evidentiary hearing on confirmation of Debtors' Chapter 12 plan. Resolutions to those objections were ultimately reached and the plan was confirmed. In the order confirming Debtors' plan the parties included a notation that "[t]he issue concerning the payment of fees for Debtors' counsel following exhaustion of any retainer shall be reserved and the Plan shall not be binding concerning these issues."[13] The parties then briefed the issue now under consideration. The confirmation order also states the following as to payments to creditors: "Standing Trustee compensation shall be determined in accordance with 28 U.S.C. § 586(e) and is based upon payments received by the Trustee under the Plan. To the extent proceeds from liquidation or refinancing are paid directly and not through the trustee to the secured creditor in that property and do not constitute payments received by the Trustee under the Plan, no trustee fee shall be assessed."[14]

The law firm has filed its First Application for Compensation and Reimbursement of Expenses, seeking interim approval of fees of $38,703.50 and expenses of $1,699.88.[15] In that Application, the law firm stated of that total of

---

[13] Doc. 120 p. 4 ¶ k.

[14] *Id.* p. 4 ¶ d.

[15] Doc. 109.

$40,403.38, “all has been paid by Debtors to Applicant, and is held in trust,” pursuant to the order granting motion for approval of compensation procedures.[16]

The Trustee objected, arguing the law firm had not complied with the order granting the motion for approval of compensation procedures because it had not filed itemized statements on a monthly basis, which supported the Trustee’s contention that attorney’s fees and expenses should be paid through case administration and not directly.[17] In a reply filed by the law firm, counsel argued this court’s Local Rule (D. Kan. LBR 2016.1) does not require monthly statements of fees, and while the compensation procedures order did indicate the law firm would file itemized fee statements on a monthly basis, the intent was to file those itemized fee statements if and when compensation was received. In other words, the law firm did not fail to follow the Local Rule and there was no legal or pragmatic reason to file a monthly itemized statement when funds were not taken by counsel.[18]

After a hearing on the matter, an agreed order was entered allowing the fees and expenses in full. The order also stated: “The allowed fees shall be paid exclusively from the funds held in counsel’s client trust account that were received from the Debtors’ parents.”[19]

---

[16] *Id.* p. 3 ¶ 8.

[17] Doc. 125.

[18] Doc. 130.

[19] Doc. 141.

## II. Analysis

### A. Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over the confirmation of the plan in this Chapter 12 case,[20] and venue is proper.[21] Debtors have the burden to show they can meet the confirmation requirements of Chapter 12.[22]

### B. Confirmation of the Chapter 12 Plan

Chapter 12 has comprehensive requirements in §§ 1222 and 1225 for both the contents of a plan and the confirmation of that plan. Chapter 12 also addresses the payments under a plan in §§ 1221 and 1226. Further, under § 1202, a Chapter 12 trustee's duties are laid out. The interpretation of these sections of Chapter 12 governs the parties' dispute.

First, under § 1202(b)(1), a Chapter 12 trustee has the statutory duty to account for payments received, furnish information about the estate's administration, and make a final report and final account of payments and distributions.[23] Under § 1202(b)(4), a Chapter 12 trustee shall "ensure that the debtor commences making timely payments required by a confirmed plan." Multiple

---

[20] 28 U.S.C. §§ 1334(b), 157(b)(1), (b)(2)(A) and (b)(2)(L) (core proceedings include "matters concerning the administration of the estate" and "confirmations of plans").

[21] 28 U.S.C. § 1409.

[22] *Ames v. Sundance State Bank (In re Ames)*, 973 F.2d 849, 851 (10th Cir. 1992) ("Debtors bear the burden of establishing all elements necessary for confirmation of a plan.").

[23] Under § 1202(b)(1), the trustee shall "perform the duties specified in sections 704(a)(2), . . . 704(a)(7), and 704(a)(9)." Section 704(a)(2) says a trustee shall "be accountable for all property received," § 704(a)(7) states that, "unless the court orders otherwise," the trustee shall furnish information concerning estate administration, and § 704(a)(9) requires the trustee to "make a final report and file a final account of the administration of the estate."

sections of Chapter 12 of the Code then govern plan payments and distribution while within the Chapter 12 case.

Section 1222(a)(1) states that a plan shall "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Section 1226 then addresses payments. Subsection (a) of § 1226 generally states that "payments and funds received by the trustee shall be retained by the trustee until confirmation," and then once a plan is confirmed, the payment shall be distributed in accordance with the plan. Subsection (b) states that before or at the time of payments to creditors under the plan, the unpaid § 507(a)(2) claims (which includes "administrative expenses allowed under section 503(b)") and the trustee's percentage fee shall be paid. Section 1226(c) then establishes the trustee as the default disbursing agent for payments to creditors, as it states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

Courts have concluded that payments to secured creditors may be made directly, as a function of the interplay of § 1226(c), which permits a debtor to "provide otherwise" in the plan for direct payments to creditors and § 1225(a)(5)(B)(ii), which states in reference to secured claims that the value of property to be distributed may be from "the trustee *or the debtor*."[24] Multiple courts

[24] § 1225(a)(5)(B)(ii) (emphasis added). *See In re Beard*, 45 F.3d 113, 119, 120 (6th Cir. 1995) (stating "a debtor clearly may directly pay off secured claims," citing §

have addressed the factors to be considered to determine whether a Chapter 12 debtor should be permitted to pay a secured creditor directly.[25] In contrast, payments to unsecured creditors do not have this statutory hook permitting direct payments, and courts have concluded direct payments to unsecured creditors are generally not permitted.[26]

The Trustee's compensation is set by 28 U.S.C. § 586(e)(2). Under that statute, a trustee "shall collect such percentage fee from all payments received by such individual under plans in the cases under . . . chapter 12 . . . of title 11 for which such individual serves as standing trustee." A standing chapter 12 trustee like in this District, i.e., one not appointed by the U.S. Trustee on a case-by-case basis, collects a capped percentage fee on payments received up to $450,000 and

---

1225(a)(5)(B)(ii)), and "based on the plain language of the statute, we hold that, just as a Chapter 12 debtor may bypass the trustee and directly pay fully secured claims, so may the debtor directly pay the secured portion of undersecured claims"); *Wagner v. Armstrong (In re Wagner)*, 36 F.3d 723, 726 (8th Cir. 1994) ("[T]he [C]ode does not forbid plan provisions allowing direct payments by the debtor to impaired secured creditors."); *In re Aberegg*, 961 F.2d 1307, 1309 (7th Cir. 1992) (permitting Chapter 13 debtors to make direct payments to creditors as requiring all payments to go through the trustee would be "inconsistent with the language of the statute"). *But see Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801, 803 (9th Cir. 1992) ("Chapter 12 of the bankruptcy code does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization [i.e., impaired secured claims] in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586.").

[25] *See, e.g.*, *In re Pianowski*, 92 B.R. 225, 243-44 (Bankr. W.D. Mich. 1988) (thirteen factor test); *Yarnell v. Erickson Partnership (In re Erickson Partnership)*, 83 B.R. 725, 727 (D.S.D. 1988) (tripartite test).

[26] "When discussing unsecured claims, section 1225(a)(4) speaks only in terms of 'property to be distributed under the plan,' unlike section 1225(a)(5)(B)(ii)'s reference to 'property to be distributed by the trustee or the debtor.' As evidenced by this difference in language, I hold that Congress did not intend for Chapter 12 debtors to make direct payments on unsecured claims." *In re Erickson P'ship*, 83 B.R. at 727–28. *See also In re Beard*, 134 B.R. 239, 242 (Bankr. S.D. Ohio 1991) (discussing difference in Chapter 12 between payment of secured and unsecured creditors in § 1225).

then a smaller percentage on payments received exceeding $450,000.[27] A Chapter 12 trustee's fee is not reviewable by the bankruptcy court.[28]

The takeaway of the above is this: a Chapter 12 trustee, who has statutory duties in the case regardless of compensation,[29] does not collect and is not entitled to a fee on payments that are made directly by a debtor and not received and then paid out through the trustee's office. The Chapter 12 trustee collects and is entitled to a fee only on "payments received by [the trustee] under plans in the cases under. . . chapter 12."[30]

---

[27] 28 U.S.C. §§ 586(b) (individual may be appointed as standing trustee when cases warrant), (e)(1)(B) (percentage fee defined).

[28] *In re Schollett*, 980 F.2d 639, 645 (10th Cir. 1992) ("[W]e hold that because the language, structure, and purpose of the Act all weigh against judicial review of the standing trustee's fees, such review is not authorized by the statute.").

[29] "Under 11 U.S.C. § 1202, the trustee is required to account for property received, ensure that the debtor makes timely payments, examine proof of claims, oversee the discharge of the debtor, furnish information concerning the estate, make a final report and accounting, appear at hearings and perform a host of other services for the debtor and the bankruptcy court." *In re Fulkrod*, 973 F.2d at 802. *See also In re Beard*, 45 F.3d at 115 ("Besides handling the debtor's funds and assuring the smooth processing and repayment of the debtor's outstanding obligations, a Chapter 12 trustee typically has additional responsibilities during the course of administering the reorganization plan. *Id.* § 1202(b); *see also id.* §§ 704(2), (3), (5), (6), (7), (9); 1106(a). Among these various duties, he must participate actively in any subsequent hearing that concerns the valuation of debtor property that is subject to a lien, *id.* § 1202(b)(3)(A), or that concerns the modification of the debtor's confirmed reorganization plan, *id.* § 1202(b)(3)(C). He must be prepared, if so requested by the court, to investigate the debtor's activities and business. *Id.* §§ 1202(b)(2); 1106(a)(3), (4). He must prepare a documented written report and account of his administration of the case. *Id.* §§ 1202(b)(1); 704(9).").

[30] 28 U.S.C. § 586(e)(2)(A); *see also In re Wagner*, 36 F.3d at 728 ("We conclude that § 586(e)(2) means what it says and requires trustee's fees only on those payments 'received by' the trustee.").

What remains for analysis is payments to administrative claimants. First, an administrative claimant is not a creditor,[31] so is not governed by § 1226(c), which by its terms applies only to "payments to creditors."[32] As one bankruptcy court noted, "[t]he term creditor under this section does not include administrative expense claimants."[33] Chapter 12 attorney's fees are claims under § 503(b) are entitled to administrative priority under § 507(a).[34]

The Code provisions applicable to administrative claimants are found in § 1222(a)(2) and § 1226(b). Section 1222(a)(2) states that the Chapter 12 plan must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless the holder of a particular claim agrees to a different treatment of that claim." Then § 1226(b) states: "Before or at the time of each payment to creditors under the plan, there shall be paid-- (1) any unpaid claim of the kind specified in section 507(a)(2) of this title."

There is no direct Code requirement that payments of these claims be made through a Chapter 12 trustee. The default section, § 1222(a)(1), does provide that a Chapter 12 debtor's earnings and income "as is necessary for the execution of the

---

[31] The term "creditor" is defined in § 101(10) and means: "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim."

[32] Section 1226(c) states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments *to creditors* under the plan." (emphasis added).

[33] *In re Heller*, 105 B.R. 434, 439 (Bankr. N.D. Ill. 1989).

[34] *In re LaRosa Greenhouse, LLP*, 565 B.R. 304, 310 (Bankr. D.N.J. 2017).

plan" be provided "to the supervision and control of the trustee."[35] And as noted above, § 1222(a)(2) requires that the administrative fees be paid. But no Code section directly addresses the situation here: how they are to be paid.

The Chapter 12 Trustee cites a handful of cases addressing the issue. One case, *In re Citrowske*, simply states, without citation to any Code section, that "all payments to . . . administrative expense claimants are paid under the plan and thus subject to the trustee's percentage fee."[36] But in *In re Citrowske*, the bankruptcy court also noted a Chapter 12 standing trustee collects the percentage fee "from payments under the plan" per 28 U.S.C. § 586(e)(2). However, the language in 28 U.S.C. § 586(e)(2) had been recently changed from awarding a percentage fee "from all payments under plans,"[37] to "from all payments received by such individual under plans,"[38] an important distinction that was not analyzed in the *In re Citrowske* case.[39]

---

[35] By implication, however, § 1222(a)(1) does not require that all payments under the plan be paid to the Chapter 12 trustee—rather, only those the earnings and income "necessary for the execution of the plan." *See* 8 *Collier on Bankruptcy* ¶ 1226.03 n.5 (Richard Levin & Henry J. Sommer eds., 16th ed.) (stating § 1221(a)(1) "requires that the plan only provide for such payments to the trustee as are necessary for the execution of the plan. It does not require that all payments under the plan be paid to the trustee and thus implies that payments under the plan may be made other than through the trustee."). *See also In re Spindler*, 623 B.R. 543, 546 (Bankr. W.D. Wis. 2020) (reading § 1226(c) and § 1222(a)(1) and stating "[r]ead together, these sections imply that *if* the plan provides otherwise, the trustee *will not* be making payments to creditors under the plan, thereby contemplating direct payments by debtors").

[36] *In re Citrowske*, 72 B.R. 613, 616 (Bankr. D. Minn. 1987).

[37] Pub. L. No. 95–598, § 224, 92 Stat. 2549 (1978).

[38] Pub. L. 99–554, § 113, 100 Stat 3088 (1986).

[39] *See In re Heller*, 105 B.R. at 437 ("A plain reading of Section 586 shows that the trustee is entitled to the statutory percentage on only those payments which the trustee receives for

Another case cited by the Chapter 12 Trustee is *In re Greseth*, which holds that §§ 1222(a)(2), 1202(b)(4) and 1226(b) work together to require a Chapter 12 debtor to pay the trustee's percentage "fee with regard to administrative payments."[40] The court in *In re Greseth* reasoned that because § 1222(a)(2) requires Chapter 12 plans to provide for full payment of all priority claims, § 1202(b)(4) requires a Chapter 12 trustee to ensure a debtor "commences making timely payments required by a confirmed plan," and § 1226(b) requires the trustee "to pay administrative claims prior to or at the time other creditors are paid under the plan," the overall scheme of Chapter 12 places "great importance on payment of administrative claims and requires significant attention to those claims by the standing trustee," thereby requiring the trustee percentage fee on attorney fee claims.[41] But actually, § 1226(b) does not require the trustee to pay administrative claims—rather, § 1226(b) says those unpaid claims "shall be paid," but it does not direct that the trustee pay them. And § 1222(a)(2) specifically states that while a plan must provide for the full payment of all priority claims, the holder of such

---

distribution. Indeed, there is nothing in the legislative history that would suggest a different interpretation. It follows, therefore, that the debtor may make certain payments directly without incurring the trustee's statutory percentage."); *In re McCann*, 202 B.R. 824, 830 (Bankr. N.D.N.Y. 1996) ("the plain language of section 586(e)(2) clearly requires the trustee to collect the statutory 'percentage fee from all payments *received by such individual*'").

[40] *In re Greseth*, 78 B.R. 936, 941 (D. Minn. 1987). *See also In re Rott*, 94 B.R. 163, 168 (Bankr. D.N.D. 1988) (concluding "trustee's fees must be paid on administrative expenses," and quoting approvingly the decision in *In re Greseth*, but in other language appearing to address payments to impaired secured creditors rather than administrative claims).

[41] *In re Greseth*, 78 B.R. at 941.

claim may agree to different treatment, and it does not address the trustee's involvement in these claims at all.

Finally, the Chapter 12 Trustee cites *In re Beard*, which also required attorney fees to be paid through the Chapter 12 trustee.[42] The court in that case focused on the first position priority given to attorney's fees by § 507 and the special attention they should be given for trustee monitoring.[43] The court reasoned the Chapter 12 trustee was "'better equipped and more capable'" of monitoring the payment of fees than the court would be through periodic reporting and should be compensated for that monitoring.[44] But the only statutory basis given for this conclusion was § 1202(b)(4)—the trustee's general duty to "ensure that the debtor commences making timely payments required by a confirmed plan."

The Court does not find the *In re Citrowske*, *In re Greseth*, and *In re Beard* cases persuasive. The cases were decided before the Sixth Circuit issued its decision in *In re Beard*[45] and the Eighth Circuit issued its decision in *In re Wagner*,[46] both of which circuit decisions would have impacted the bankruptcy courts in those respective circuits. In *In re Beard* and *In re Wagner*, the Sixth and Eighth Circuits, while not directly addressing direct payment of attorney fee claims, did conclusively hold that the overall scheme of Chapter 12 and the direct language of the applicable

---

[42] *In re Beard*, 134 B.R. 245-46 (Bankr. S.D. Ohio 1991).

[43] *Id.* at 246.

[44] *Id.* (quoting *In re Heller*, 105 B.R. 434, 439 (Bankr. N.D. Ill. 1989)).

[45] 45 F.3d 113 (6th Cir. 1995).

[46] 36 F.3d 723, 728 (8th Cir. 1994).

Code sections therein permitted direct payment of secured creditors and direct payment of the secured portion of undersecured claims.[47] The Sixth Circuit relied in part on the language of 28 U.S.C. § 586(e)(2), noting Congress did "'not state 'payments received or that could have been received,' 'payments made by the trustee or debtor under the plan,' or other similar language which would mandate payment of the percentage fee on a constructive receipt basis.' Instead, Congress constructed a scheme that envisioned that debtors would at times be able to pay their debts directly to their creditors, allowing them to bypass the trustee."[48] The Sixth and Eighth Circuit focused on the language of 28 U.S.C. § 586(e)(2) as controlling.

No Tenth Circuit case law provides direction. There is a Tenth Circuit Bankruptcy Appellate Panel (BAP) case, *In re Miller*, which in dicta makes the observation that "case law" supports the conclusion that "administrative expense payments should be monitored by the trustee as part of his statutorily-imposed duties and, therefore, should be made through the plan."[49] In the *In re Miller* case,

---

[47] *In re Beard*, 45 F.3d at 120 ("Thus, based on the plain language of the statute, we hold that, just as a Chapter 12 debtor may bypass the trustee and directly pay fully secured claims, so may the debtor directly pay the secured portion of undersecured claims."); *In re Wagner*, 36 F.3d at 728 ("The debtors owe no fees to [the Chapter 12 trustee] for the debtors' direct payments to their impaired secured creditors.")

[48] *In re Beard*, 45 F.3d at 119 (quoting *In re Pianowski*, 92 B.R. 225, 232 (Bankr. W.D. Mich. 1988)); *see also In re Wagner*, 36 F.3d at 728 ("We conclude that § 586(e)(2) means what it says and requires trustee's fees only on those payments 'received by' the trustee. Thus, these Chapter 12 plans, which preclude payment of trustee's fees to the extent that the trustee is not involved and a direct payment is made, do not conflict with the bankruptcy code and are valid." (internal citation omitted)).

[49] *In re Miller*, 288 B.R. 879, 883 (B.A.P. 10th Cir. 2003).

one of the issues on appeal was whether the bankruptcy court properly ordered the payment of attorney fees "through the plan" rather than "outside the plan" – i.e., whether the fees should be paid through the Chapter 12 trustee's office.[50] The Tenth Circuit BAP affirmed the bankruptcy court, concluding the confirmation order and plan both required the payment through the Chapter 12 trustee's office.[51] As noted, the Tenth Circuit BAP mentioned cases supporting that practice, citing the bankruptcy court decisions in *In re Beard*[52] and *In re Heller*.[53] But as indicated above, those two cases were decided based on policy considerations, and have been considered by some courts as the minority position.[54] Regardless, the Tenth Circuit BAP did not discuss the applicable Code provisions, and its statement was made in dicta.

The Chapter 12 Trustee acknowledges two cases permitting the payment of attorney fees directly and not through trustee administration and subject to the trustee's percentage fee, albeit with caveats. First, in *In re Heller*, although the bankruptcy court states a preference for a default position of attorney fee claims to be paid through the Chapter 12 trustee, based on the trustee's duty to monitor and

---

[50] *Id.*

[51] *Id.*

[52] 134 B.R. 239 (Bankr. S.D. Ohio).

[53] 105 B.R. 434 (Bankr. N.D. Ill. 1989).

[54] *In re Johnson*, No. 25-10103-RMM, 2026 WL 496953, at *6-7 (Bankr. M.D. Ga. Feb. 20, 2026) (addressing related issue of Chapter 12 trustee fee's applicability to direct payments, reviewing case law, and concluding cases failing to give effect to the plain meaning of 28 U.S.C. § 586(e)(2) are the minority position and "no longer good law").

review the payments,[55] the bankruptcy court then indicated there could be "extreme circumstances where the trustee believed that his duty to monitor could be met without making the actual distribution," in which case "the trustee could allow for the payment of attorney's fees directly."[56] The bankruptcy court stated its preferred position was for the plan and confirmation order to reflect a negotiation between the parties to determine the appropriate combination of payments to be made by the Trustee and the Debtors in order "to achieve a balance between the divergent and competing interest involved."[57]

Second, in *In re Pianowski*, the bankruptcy court addressed confirmation of a plan that provided for direct payment of all secured creditors and all entities holding administrative claims.[58] Based on its considerations of §§ 1226(c), 1225(a)(5)(B)(ii), and 1222 and 28 U.S.C. § 586(e)(2), and the related legislative history, and policy considerations, the bankruptcy court concluded "a Chapter 12 debtor may be permitted to directly pay secured creditors and administrative attorneys' fees pursuant to a Chapter 12 plan of reorganization" without payment of the Chapter 12 trustee percentage fee.[59] The *Pianowski* court noted Chapter 12 debtors would not have an "automatic or absolute right" to make direct payments, but the Court would instead consider direct payments on a case-by-case basis when

---

[55] *In re Heller*, 105 B.R. 434, 440 (Bankr. N.D. Ill. 1989).

[56] *Id.* at 440.

[57] *Id.* at 438.

[58] *In re Pianowski*, 92 B.R. 225, 228 (Bankr. W.D. Mich. 1988).

[59] *Id.* at 233.

asked to do so.[60] The bankruptcy court then laid out thirteen factors it would use to "balance an individual debtor's needs and desires to succeed in his or her reorganization efforts, a creditor's rights in preserving its property interest and receiving fair repayment of its indebtedness, and society's interests in an efficient, economical and non-abusive bankruptcy reorganization process."[61] Regarding the attorney fees proposed to be paid directly, the bankruptcy court noted the attorneys agreed to deferred payment from future income of the debtors without the Chapter 12 trustee's supervision, that any payments would be subject to bankruptcy court approval, and the court found no reason to prohibit the direct payment as long as the attorneys' fee reports were filed with the court and served on the Chapter 12 trustee.[62]

As other courts have noted, and this Court concludes, there is no statutory directive either permitting or forbidding the direct payment of attorney fees. There are defaults in the Code, but those also clearly indicate exceptions can be made. For example, § 1226(c) directly specifies *payments to creditors* shall be made by the trustee *except as otherwise provided*. This section contemplates that even as to the default payment through the trustee to creditors, the plan can provide otherwise. Then § 1225(a)(5)(B)(ii) expressly permits payments to secured creditors by the debtor. And 28 U.S.C. §586(e)(2) also contemplates payments may either be paid

---

[60] *Id.*

[61] *Id.* at 234.

[62] *Id.* at 237.

through the trustee or by the debtor – otherwise, why would it specify that the trustee percentage fee is to be paid on payments *received by* the trustee? If all payments were to go through the Chapter 12 trustee, that language would be superfluous.

Admittedly, the Code is silent on who and how attorney fee claims should be paid; only that they are entitled to priority and should be paid. But as the bankruptcy court in *In re Heller* noted, the implication from this is that the silence leaves the issue open for negotiation, not rule.[63] This Court also concludes negotiation is the best approach. Chapter 12 is a balancing act. If the administrative fees of Chapter 12 are too onerous, there will be no debtors willing or able to utilize Chapter 12. But also, there are benefits to Chapter 12, and debtors must pay their share of the costs of the administration of Chapter 12 cases.

As more recent bankruptcy case law has noted, in the absence of a clear statutory directive or controlling circuit case law, ultimately, the decision whether to permit direct payment is a discretionary one of the bankruptcy court.[64] In a case such as this, when the parties need a decision from the Court about whether a debtor's attorney fees must be paid through case administration, the Court finds the *Pianowski* factors to be a helpful (nonbinding) tool for analysis. The factors are:

---

[63] *In re Heller*, 105 B.R. at 439 (the Code's silence "leaves to negotiations the treatment of most other claims").

[64] *In re Speir*, No. 16-11947-JDW, 2018 WL 3814276, at *4 (Bankr. N.D. Miss. Aug. 8, 2018); *see also In re Spindler*, 623 B.R. 543, 548 (Bankr. W.D. Wis. 2020) ("Determination of whether payments will be direct or through the Trustee should be made case-by-case. The *Pianowski* factors are not binding but instructive. It is within the discretion of the Court to consider and weigh the factors in each case or even for different claims in the same case.").

1. The past history of the debtor;

2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor;

5. the ability of the debtor to achieve meaningful reorganization absent direct payments;

6. the plan treatment of each creditor to which a direct payment is proposed to be made;

7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

9. the ability of the trustee and the court to monitor future direct payments;

10. the potential burden on the Chapter 12 trustee;

11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

12. the potential for abuse of the bankruptcy system;

13. the existence of other unique or special circumstances.[65]

The application of those factors here supports the result that direct payment of the attorney fees should be permitted.

In this case, Debtors are sophisticated and operate a large, multi-aspect farm operation. There has been no bad faith in the filing or the prosecution of the

[65] *In re Pianowski*, 92 B.R. at 233-34.

Debtors' Chapter 12 case. Debtors appear to have maintained reliable and consistent operations. A significant portion of the attorney fees have been and will be paid via the prepetition, third party retainer. Debtors' counsel has consented to the direct payment of the fees and obviously has the incentive to monitor payments. Debtors will file fee disclosures as necessary, apprising the Court, all creditors, and the Chapter 12 Trustee of fee payments. The Court sees no evidence of abuse or manipulation of the Chapter 12 process through the direct payments proposed. There is no evidence direct payments will result in preferential treatment of clams or unfair discrimination. Debtors are paying the vast majority of the payments under their confirmed plan through the Chapter 12 Trustee[66]—this is not a case of unfair manipulation of the Chapter 12 process by Debtors or their counsel. Debtors are not using the Chapter 12 system without paying their share of the fees for that system. The Court has reviewed Debtors' plan, the confirmation order, and its own docket, and concludes direct payment of attorney fees in this case is permissible.

[66] Per Debtors' plan, each class of claims other than attorney fee claims and payments made after sales will be paid through the Chapter 12 Trustee. *See* Doc. 68 p. 12 ("Except for the Sales, the payments to the Class 2 Claims shall be made through the Trustee during the term of the Plan, and directly by the respective Debtors afterwards, until the claims, together with interest, are paid in full."), p. 12 (same language, Class 3), p. 13 (same language, Class 4), p. 13 (same language, Class 5), p. 14 (same language, Class 6), p. 14-15 (same language, Class 7), p. 15 (same language, Class 8), p. 16 (same language, Class 9), p. 16 (same language, Class 10), p. 17 (same language, Class 11), p. 17 ("The payments to the Class 12 Claim shall be made through the Trustee."), p. 18 ("The payments to the Class 13 Claim shall be made through the Trustee during the term of the Plan and directly by the Debtors thereafter until the Claim, together with interest, is paid in full."), p. 18 ("The payments to the Class 14 Claims shall be made through the Trustee."), p. 19 ("The Class 15 Claims shall be paid through the Trustee.").

The Chapter 12 Trustee contends attorney "fees should be paid through the Trustee as a matter of law."[67] The Court finds no provision of the Bankruptcy Code demanding that result. The Trustee's objection to confirmation on this basis is overruled.

## III. Conclusion

The Court overrules the Chapter 12 Trustee's objection to confirmation reserved for this Court's decision. Debtors are permitted to directly pay professional fees as they are allowed by this Court.

**It is so ordered.**

# # #

[67] Doc. 120 p. 4 ¶ k. From a policy perspective, the Chapter 12 Trustee says direct payment in Chapter 12 would create monitoring and disclosure risks, essentially arguing that because § 1222(a)(2) requires that a plan provide for the full payment of priority claims, the Code must mean a Chapter 12 trustee is to pay those claims. Debtors respond that the Chapter 12 Trustee is seeking to turn Chapter 12 into Chapter 13, and that at least as to the payment of administrative expenses, Chapter 12 is actually more like Chapter 11, in that Chapter 12 expressly grants the "rights . . and powers . . . of a trustee serving in a case under chapter 11" to the Chapter 12 debtor in § 1203, including the operation of the ongoing business by the debtor-in-possession. Moreover, a Chapter 12 debtor has significant ongoing administrative expenses, and so Debtors argue, is significantly different than a Chapter 13 debtor. Debtors also point out Chapter 12 debtors' counsel almost exclusively hold significant prepetition retainers in this District, and the impact of both the typical retainer and this Court's Local Rule (D. Kan. LBR 2016.1, which is expressly applicable in Chapter 12 cases and permits the monthly compensation of professionals), impacts the payment of fees in a Chapter 12 case. The Court need not opine on these broad policy issues regarding whether the Code should or should not be read to imply a requirement for the trustee to pay debtor attorney fees in Chapter 12. The Code is not ambiguous in this regard. Its language simply does not *require* what the Chapter 12 Trustee asks. Whether it would make sense for the Code to contain such a requirement is the province of Congress.